Walter O. Kraft v. Commissioner. Adena L. Kraft v. Commissioner.
Kraft v. Commissioner
Docket Nos. 14975, 14976.
United States Tax Court
1949 Tax Ct. Memo LEXIS 148; 8 T.C.M. (CCH) 606; T.C.M. (RIA) 49159; June 22, 1949
Whitfield H. Marshall, Esq., and Chester M. Fulton, Esq., for the petitioners. John P. Higgins, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: In these consolidated proceedings the respondent determined deficiencies in income tax for the calendar year 1944 as follows: Docket No.
Petitioner
Deficiency
14975
Walter O. Kraft
$463.91
14976
Adena L. Kraft
475.77
The only issue to be determined is whether a portion of the loss sustained *149 in connection with the sale of a camp was a loss incurred by petitioners in a trade or business and was deductible under section 23(e)(1), Internal Revenue Code. Findings of Fact Petitioners are husband and wife, residents of Houston, Texas, and each filed a separate income tax return on a community property basis with the collector of internal revenue for the first district of Texas. (Hereafter Walter O. Kraft will be referred to as petitioner.) Petitioner is engaged in the general insurance business, being senior member of a partnership firm called Cochran's Insurance Agency, which solicits and writes insurance for the public as agent of various companies which it represents. Petitioner first acquired a one-third interest in the firm in 1920. From 1926 to 1932 he owned the entire business. In 1932 Henry Greenfield acquired an interest in the business, and later an interest was acquired by E. C. Buster. From 1935 and continuously through and after the year 1944 petitioner and Greenfield each owned 42 1/2 per cent of the business, while Buster owned 15 per cent thereof; however, petitioner received 55 per cent of the profits, Greenfield 30 per cent and Buster *150 15 per cent. The Cochran Agency sells more fire and casualty insurance than any other type. Its business consists of both small and large accounts, but the major portion of the premiums is from the larger accounts and its customers live principally in Houston and Harris County. In 1928 petitioners acquired Lot 1, Block 1 in Lakeside Addition, Galveston County; in 1932 they acquired Lot No. 2, and in 1936, Lots 13 and 14, all of which were contiguous lots of unimproved land located on Clear Lake in Galveston County, about thirty miles from Houston. Clear Lake is a body of water about one mile wide and three or four miles in length, and empties into Galveston Bay. In 1935 petitioners constructed a box house on the premises and equipped and furnished it. The house consisted of two bedrooms, kitchen, bath, another room containing a fireplace, and a screened porch 130 feet in length. Since the house was not served with electricity, butane gas facilities were installed for cooking and lighting purposes. Also constructed were a boat house and a pier, which extended out into the lake 250 feet. A water well was dug, upon which was placed a gasoline pump. At one time two outboard motor *151 boats and one Garwood speed boat were used in connection with the premises. Landscaping was done on the land, including the planting of rose bushes and other shrubbery, and St. Augustine grass. This property will hereafter be called Clark Lake Camp. Petitioner's family, when he built this camp, comprised himself, his wife and a seven year old daughter (who occupied a home in Houston) and they then and thereafter visited the camp at intervals, usually in the summer time, when they would stay about a week or ten days each visit. In June, July and August they were there about half of the time. In other seasons their visits were rare. Mrs. Kraft was afraid of storms and would insist on returning home when a storm cloud appeared. Clear Lake Camp was acquired and constructed by petitioner primarily as a place for entertaining his insurance customers and prospective customers, in order to promote and expand his insurance business, and two-thirds of its use was devoted thereto and one-third to the personal use of petitioner and his family, from its acquisition to and including the taxable year. The insurance business requires extensive personal contacts. Some insurance agencies in Houston *152 keep yachts for entertaining their customers and prospective customers, others have places out in the country which they use for that purpose. Prior to 1935 petitioner entertained his customers and prospective customers at the Manor Lake Hunting and Fishing Club and Glenbrook Country Club, of which he ceased to be a member when he established Clear Lake Camp. At Clear Lake Camp petitioner and members of his insurance firm would frequently (ordinarily on weekends) have stag parties and entertain business men, usually executives in large enterprises who were customers or prospective customers of his insurance firm. Boating, eating, drinking and playing poker were some of the things indulged in on these occasions. Servants were taken from Houston to prepare and serve the food and refeshments. The major expenses of entertaining and maintaining the camp were paid by petitioner's insurance firm, and the balance by petitioner. Customers of the firm had the privilege of visiting the camp at all times and the caretaker was instructed to admit them. The entertainment and contacts between petitioner and his guests at the camp promoted good will between them and created and cemented ties of friendship *153 which was [were] directly responsible for some of the guests giving petitioner and his firm all or more of their insurance business than they had theretofore, and new customers were also secured thereby and substantial business benefits accrued to petitioner therefrom. Specifically, petitioner and his firm, by reason of such entertainment and contacts, secured, among others, a substantial increase in the volume of insurance business and resultant profits from three large business concerns in Houston, viz.: Henke & Pillot, Inc., First National Bank and Peden Steel Company. Petitioner used Clear Lake Camp and its facilities for not less than two-thirds of the time it was in use for entertaining customers and prospective customers and other purposes incident to and in furtherance of his insurance business, and the remaining one-third for the personal use of himself and family. The Clear Lake Camp was the property of petitioners (not that of his firm) and its cost to petitioners was the sum of $8,127.54, the items comprising same being approximately as follows: Land
$3,599.24
Improvements
3,432.18
Furnishings
593.21
Water well
279.66
Water well equipment
223.25
Total
$8,127.54
*154 Petitioners and respondent stipulated as to the reasonable rate of depreciation on the improvements, furnishings and water well equipment, and based thereon the total depreciation allowable on the property is $976.70, or a depreciation allowable to each petitioner in the sum of $488.35. The property was sold July 10, 1944, for $5,700 less expenses of sale, $16.60, leaving $5,683.40 as the net selling price. The total loss sustained by petitioners on the sale after deducting the depreciation allowable of $976.70 was $1,467.44. Petitioners in their 1944 income tax return claimed 100 per cent of the loss as deductible and made no allowance for depreciation, but in their amended petition claimed only 75 per cent of the loss as deductible, and on the hearing petitioners and respondent stipulated as to the rate of depreciation. The Commissioner refused to allow the petitioners deduction of $2,444.14 claimed by them in their 1944 income tax returns as loss on sale of the property, on the ground that same was not deductible "under the provisions of section 23(e)(1)", and further, that a "proper basis for determination of any loss from the sale of the property had not been proven", and *155 determined an income tax deficiency of $463.91 in W. O. Kraft's income tax for 1944 and $475.77 in that of Mrs. Adena L. Kraft. Opinion We can not agree with the respondent that Clear Lake Camp was acquired by petitioner W. O. Kraft as a summer home for his family. The evidence shows, as stated in our findings of fact, that the property was acquired primarily for the purpose of entertaining his customers and prospective customers, as a means of expanding his insurance business, and that two-thirds of its use was devoted thereto, and petitioner's insurance business was materially increased thereby. Its occasional use by the family will not alter its status. The primary purpose for which it was acquired and used must control. In C.B. No. 4, p. 163, O.D. 943, it was ruled: "If an automobile is purchased with the intention of using it in a business and it is appropriated to business uses primarily, a loss sustained through its sale may be deducted in computing net income notwithstanding its occasional use for pleasure purposes." Also in G.C.M. 8628, Vol. IX 1930 C.B., p. 112, it was ruled that where an automobile was used three-fourths of the time for *156 business and one-fourth of the time for pleasure, 75 per cent of the loss sustained in its sale was an allowable deduction under section 23(e)(1) of the Code. This is the same loss percentage petitioners here claim. "* * * If direct business benefits may reasonably be expected to flow from the entertaining, then the amount should be deductible even though there may be some overlapping between personal pleasure and business incentive, if the type of entertaining is a normal procedure in similar lines of business activities. * * *" [Mertens Law of Federal Income Taxation, Sec. 25:78, Vol. 4, p. 470]. In the instant case it appears that it was usual and customary for those engaged in the insurance business at Houston to employ somewhat similar means of entertaining their customers as that employed by the petitioner W. O. Kraft. Furthermore the definite purpose to use Clear Lake Camp for business entertainment is well established and that it was reasonably calculated to accomplish the end sought can not be doubted since direct benefits therefrom by a substantial increase in petitioner's business is established by the evidence. It has been further held that the property used in *157 such entertainment is a business asset, and not only its cost of operation but also depreciation thereon are both allowable business deductions under section 23(e)(1), even though the property has no relation to the business of the taxpayer, other than for entertainment purposes. In E. E. Dickinson, 8 B.T.A. 722, where the taxpayer was engaged in the manufacture and sale of witch hazel, for the purpose of furthering his business he bought a yacht which was used in entertaining his customers by giving them free rides thereon and it was held that the yacht was a "business asset" and its cost of operation and depreciation were both deductible. See also Trustee Property No. 4, 21 B.T.A. 627, where a yacht was owned and used for advertising and entertainment of customers, deductions for repairs, etc., were held deductible. Clear Lake Camp was a business asset of petitioner's and loss incurred in its sale to the extent of two-thirds thereof was a loss incurred in trade or business covered by section 23(e)(1) of the Code. Samuel Riker, Jr., Executor, 6 B.T.A. 890, cited by respondent, is not in point. There the taxpayer was not permitted to deduct *158 loss on the sale of a share of stock in a country club for the reason that "the purchase of the stock was made rather for the personal convenience of Haskell [the taxpayer] than for business purposes." We hold that petitioners are entitled to a deduction of $978.30, being two-thirds of the deductible loss sustained in the sale of Clear Lake Camp. Decisions will be entered under Rule 50.